No. 74,361

STATE OF KANSAS, *Appellee*, v. JOHNNIE P. SCALES, *Appellant*.

933 P.2d 737

Opinion filed March 7, 1997.

*Thomas W. Bartee*, special appellate defender, argued the cause, and *Mary D. Prewitt*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the briefs for appellant.

*Timothy J. Chambers*, county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This case arises from the January 29, 1995, homicide of Kevin Covington in Reno County. The question we must decide on grant of review is whether the defendant was denied a fair sentencing hearing because of the court's ex parte meeting with the family of the homicide victim and because of the court's ex parte consideration of a petition requesting the imposition of a harsh punishment. We conclude that the defendant was denied a fair sentencing hearing; therefore, we vacate the sentences and remand for sentencing before a different judge.

The defendant pled guilty to voluntary manslaughter, K.S.A. 21-3403, and criminal possession of a firearm, K.S.A. 21-4204. Because of the defendant's plea, the record contains very little concerning the incident giving rise to the charges. The record does indicate that the victim was a popular young athlete from a town in Florida. People in that town were shaken by the victim's death and attempted to make their views known to the sentencing court. Moreover, the family of the victim was critical of the prosecutor's office for entering into what it considered to be a lenient plea agreement with the defendant.

At his sentencing hearing, the court heard argument from both sides as well as testimony from the victim's mother and uncle. The victim's mother spoke of her loss, her impression of the intentional nature of the killing, and that her son "didn't have a chance to plea bargain." The victim's uncle complained of the State's plea agree-

ment, requested vacation of the plea, and suggested that the State's use of the plea bargain was racially motivated. After hearing all arguments, the court imposed a sentence of 77 months for manslaughter and 9 months for criminal possession of a weapon, with sentences to run consecutively. These sentences were the maximum presumptive sentences available for the defendant's convictions under the sentencing guidelines. The court advanced two reasons for exercising its discretion to impose the maximum sentence possible without departing: The defendant had been previously convicted of a felony, criminal possession of a firearm, K.S.A. 21-4204, and the killing was intentional.

The subject of this appeal involves two ex parte communications with the trial court. The first occurred the day before the defendant's scheduled sentencing hearing. At the sentencing hearing, the court stated that the previous day, it had met privately with members of the victim's family, including the victim's mother and uncle, who testified at the sentencing hearing. The court explained:

"Yesterday I was requested to meet with Mr. Walton [the victim's uncle] and Ms. Crayton [the victim's mother] and I consented to do that. They met in my office with me and they had a young man with them who was identified to me I believe as Chris and they expressed their dissatisfaction and frustration, much as they have done in the last couple of minutes [testifying at the sentencing hearing], and that was about the extent of the meeting. I did not discuss with them the sentencing I would impose, but it was, it was an expression of their frustration over the proceedings and how the case has been handled, but yes, Mr. Butcher [counsel for the defendant], I did meet with them."

The defendant objected to this ex parte communication. The record does not reflect when the defendant was apprised of this meeting; however, the record shows he brought his concerns to the judge an hour and a half prior to the sentencing hearing.

The second communication, a petition signed by approximately 2,000 persons from the victim's hometown in Florida, also occurred prior to the scheduled sentencing hearing. At the sentencing hearing the judge stated:

"I would state for your . . . information, Mr. Scales, and also for counsel, I'm not going to keep it from anyone that I have received petitions with nearly two thousand signatures requesting that I quote, 'Impose the maximum sentence for such senseless and cold-blooded act of murder in the first degree.' I cannot impose

that sentence. I will not impose that sentence, but you need to understand, Mr. Scales, the results of your intentional killing of Kevin Covington which is what we're dealing with here."

The defendant again objected and stated that he was unaware of the petitions mentioned by the court.

The Court of Appeals in *State v. Scales*, No. 74,361, an unpublished opinion filed June 7, 1996, affirmed the trial court's sentences, holding that the defendant failed to show the sentences imposed were the result of partiality, prejudice, oppression, or corrupt motive and that the sentences did not amount to an abuse of discretion. We granted the defendant's petition for review.

In arriving at its decision, the Court of Appeals recognized that in this case the sentence imposed was within the presumptive guidelines range. This fact normally would preclude appeal under the provisions of K.S.A. 21-4721(c)(1). However, the Court of Appeals correctly noted that the provisions of K.S.A. 21-4721(e)(1), which allow for appellate review of claims that "the sentence resulted from partiality, prejudice, oppression or corrupt motive" provided the basis for the court's jurisdiction.

While acknowledging that the trial court's ex parte communications violated the Code of Judicial Conduct, the Court of Appeals applied the following standards of review in determining both that the sentences were not the result of partiality, prejudice, oppression, or corrupt motive and that the sentences did not amount to an abuse of discretion:

"Whenever a defendant is sentenced to a presumptive sentence and there is no claim of error in regard to crime severity level or criminal history, there is a strong legislative presumption that the sentence is not the result of partiality, prejudice, oppression, or corrupt motive." *State v. Starks*, 20 Kan. App. 2d 179, Syl. ¶ 9, 885 P.2d 387 (1994).

"The burden is upon the party claiming error to show the sentence was the result of partiality, prejudice, oppression, or corrupt motive. See *State v. Heywood*, 245 Kan. 615, 620-21, 783 P.2d 890 (1989) (defendant who asserts the court abused its discretion in sentencing bears the burden to show such abuse)." *Starks*, 20 Kan. App. 2d at 183.

"Allegations of judicial misconduct must be decided on the particular facts and circumstances of each case. Reversal is required only when the appellant has shown the conduct prejudiced his substantial rights." *State v. Walker*, 252 Kan. 279, 290, 845 P.2d 1 (1993).

We adhere to the above standards adopted by this court in reviewing impositions of sentence under the Kansas Sentencing Guidelines Act. However, under the facts of this case, we need look no further than the nature of the hearing that took place upon sentencing to conclude that the proceeding was inherently unfair. While not all ex parte communications with a trial court require reversal, the communications in this case undermine any confidence we have in the impartiality of the sentencing proceeding.

At the time of the defendant's sentence on March 24, 1995, Rule 601 of the Code of Judicial Conduct applied to the actions of the trial judge in this case. Canon 3, entitled "A Judge Should Perform the Duties of His Office Impartially and Diligently" (1996 Kan. Ct. R. Annot. 392), provides:

"A. *Adjudicative Responsibilities*.

"(1): A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.

. . . .

"(4): A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding."

The comment to Canon 3A(4) explains: "The proscription against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted [*i.e.*, brief *amicus curiae*]." (1996 Kan. Ct. R. Annot. 392-93).

We note that recently this court revised the Code of Judicial Conduct by adoption of Supreme Court Rule 601A which governs judicial conduct on or after June 1, 1995. This revised Canon provides a very limited exception to the rule against ex parte communications:

"(a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

"(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and

"(ii) the judge makes provisions promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond." Canon 3B(7) (1996 Kan. Ct. R. Annot. 413-14).

However, whether considered under the Rule 601 or 601A, the ex parte communications engaged in by the trial court in this case are expressly prohibited by the Code of Judicial Conduct.

Such communications, even with the later explanation provided by the trial judge on the record, undermine the confidence of fairness in a judicial proceeding. Justice Cardozo emphasizes the importance of the appearance of impartiality: "One of the most fundamental social interests is that law shall be uniform and impartial. There must be nothing in its action that savors of prejudice or favor or even arbitrary whim or fitfulness." Cardozo, The Nature of the Judicial Process, p. 112 (1921), as quoted in Shaman, Judicial Conduct and Ethics § 3.01 (1995). The ex parte rule carries a distinct purpose to protect parties' due process rights to a fair trial.

"*Ex parte* communications deprive the absent party of the right to respond and be heard. They suggest bias or partiality on the part of the judge. *Ex parte* conversations or correspondence can be misleading; the information given to the judge 'may be incomplete or inaccurate, the problem can be incorrectly stated.' At the very least, participation in *ex parte* communications will expose the judge to one-sided argumentation, which carries the attendant risk of an erroneous ruling on the law or facts. At worst, *ex parte* communication is an invitation to improper influence if not outright corruption." Shaman, Judicial Conduct and Ethics § 5.01.

We have been careful to protect the due process rights of parties involved in criminal proceedings in this state. "At a minimum, the essential elements of due process of law in a hearing affecting a person's life, liberty or property are notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *State v. Starbuck*, 239 Kan. 132, 134, 715 P.2d 1291 (1986). We have emphasized due process rights during sentencing proceedings in past cases.

In *State v. Grantom*, 229 Kan. 517, 625 P.2d 499 (1981), the defendant argued that due process and Kansas statutes mandated that he receive a copy of his presentence report. In holding that

the defendant's counsel's possession of the presentence report was sufficient to meet due process requirements, we noted:

"The United States Supreme Court has held that a sentence predicated on false information denies the defendant due process of law, *Townsend v. Burke*, 334 U.S. 736, 740-41, 92 L. Ed. 1690, 68 S. Ct. 1252 (1948), and a sentence so rendered requires vacation and remand for resentencing. *United States v. Tucker*, 404 U.S. 443, 447, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972). To meet due process requirements, the sentencing procedure must afford a defendant the opportunity to deny or explain information considered in determining the appropriate sentence. *Gardner v. Florida*, 430 U.S. 349, 362, 51 L. Ed. 2d 393, 97 S. Ct. 1197 (1977); *Williams v. New York*, 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949)." *Grantom*, 229 Kan. at 518-19.

In *State v. Buckland*, 245 Kan. 132, 777 P.2d 745 (1989), the defendant challenged his sentence on the grounds that he was not present at a hearing addressing modification of his sentence. 245 Kan. at 142. Relying upon *Grantom*, we vacated the defendant's sentence and remanded for resentencing stating:

"Where a hearing is held on a motion to modify and the State is represented, the defendant should also be represented either by counsel or in person if appearing pro se. Where the defendant appears pro se, as did Buckland, he should be permitted to appear on his own behalf at the modification hearing." *Buckland*, 245 Kan. at 142.

Fairness in sentence demands that the defendant be given an opportunity to deny or explain information considered by the court in arriving at an appropriate sentence. When that information is the subject of ex parte communications with the sentencing judge, the defendant is deprived of that opportunity. In this case, because of the nature of the ex parte communications, the sentencing procedure did not afford the defendant the opportunity to deny or explain information considered by the sentencing court.

Other jurisdictions dealing with the same question have not hesitated to condemn the same kinds of ex parte communications that occurred in this case. In *State v. Valencia*, 124 Ariz. 139, 602 P.2d 807 (1979), the trial court judge met with the brother of a homicide victim, who asked the court to impose the death penalty. The trial judge stated that "he was noncommittal with [the victim's brother], indicating only that it was a difficult decision and that the court

would consider all the facets of the matter." 124 Ariz. at 140. The Supreme Court of Arizona found that the trial court violated Canon 3(A)(4) of the ABA Code of Judicial Conduct. 124 Ariz. at 140. Based on this violation and the fact that sentencing proceedings in Arizona were controlled by rules of evidence, the court determined that "the fundamental rights of the defendant to a fair hearing [were] impinged." 124 Ariz. at 141.

The National Judicial College in its book Ethics for Judges offers the following explanation for the rationale supporting the *Valencia* decision:

"Should a Judge discuss the sentencing of a defendant with the victim or any of his or her relatives? The Supreme Court of Arizona had held that the judge who did that violated Canon 3(A)(4). *State v. Valencia*, 602 P.2d 807 (Ariz. 1979). But don't judges obtain the same information in presentence investigative reports? Yes, in many states the victim is interviewed and this is contained in the report to the judge. *However, unfavorable information contained in the report is then available to defense counsel so that the defendant affected may have an opportunity to rebut it. This is not true in an ex parte communication.*" Fretz, Ethics for Judges, p. 20 (1982). (Emphasis added.)

See also *People v. Mote*, 255 Ill. App. 3d 757, 627 N.E.2d 1253 (1994) (fact that the trial court disclosed intention to conduct a private interview with the victim made no difference regarding whether the ex parte communication was proper); *State v. Romano*, 34 Wash. App. 567, 662 P.2d 406 (1983) (judge's ex parte communication with consultants regarding defendant's case violated due process by creating an appearance of unfairness notwithstanding the lack of any showing the judge was affected by the communication); *People v. Webster*, 143 Cal. App. 3d 679, 192 Cal. Rptr. 86 (1983) (sentence vacated due to ex parte communications between judge and Youth Authority officials even though communications were favorable to defendant); *Bowlin v. State*, 643 P.2d 1 (Alaska App. 1982) (sentence overturned because the non-legal advocate of victim sent letter to judge discussing defendant's history and requested harsh sentence). *C.f. State v. Small*, 411 A.2d 682 (Me. 1980) (sentencing judge's immediate notification to both parties of crime inspector's letter regarding sentencing provided

the parties full opportunity to respond and mitigated any due process violations).

*State v. Rice*, 145 Vt. 25, 483 A.2d 248 (1984), deals with a sentencing court's ex parte consideration of signed petitions. The case illustrates the factual approach to evaluating the effect of public clamor on a sentencing judge. In *Rice*, the Vermont Supreme Court found reversible error based on the sentencing judge's admission of 22 petitions signed by 572 persons into evidence during a sentence review. The court explained the ethical violation: "By admitting the petitions into evidence [the trial judge] unwittingly injected bias, prejudice and public clamor into the case and gave the appearance of a decision rendered under the duress of public criticism rather than the calm deliberation needed at the time." 145 Vt. at 32. The *Rice* court concluded that this error was not harmless because it found several instances where the lower court exhibited bias on the record. The court concluded:

"Because it is self-evident to us, on the record of this case, that one of the trial judge's reasons for enhancing the initial sentence he meted out to the defendant a week earlier was the pressure exerted upon him by the petitions erroneously admitted into evidence, we must remand the case for a new hearing on the State's motion for sentence review and require that the hearing be held before a different judge." 145 Vt. at 33.

See also *State v. Samson*, 388 A.2d 60 (Me. 1978) (remarks on record show sentencing judge was influenced by poll of community members on issue of sentencing); *cf. State v. Mincey*, 141 Ariz. 425, 687 P.2d 1180 *cert. denied* 469 U.S. 1040 (1984) (no error found due to unnamed unknown parties' statements to judge to be tough when sentencing because comments did not address factual matters or suggest sentences).

As one can readily see from the above analysis, the determination of whether ex parte communications of the trial judge require reversal must be determined on a case-by-case basis in accord with the standard of review set forth above. When, as here, the court violates the express provisions of the Code of Judicial Conduct with the result of directly impinging upon a defendant's due process rights to a fair sentencing hearing, we need not test for prejudice

but reverse on the basis of a denial of a fair sentencing hearing to the defendant.

Judgment of the Court of Appeals is reversed. Judgment of the district court is reversed, the defendant's sentence is vacated, and the case is remanded for resentencing before a different judge.