No. 79,143

STATE OF KANSAS, *Appellee/Cross-appellant*, v. OMAR JASON SAMPSEL, *Appellant/Cross-appellee*.

(997 P.2d 664)

Opinion filed January 28, 2000.

*Rebecca E. Woodman*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the briefs for appellant.

*Joe E. Lee*, county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Omar Jason Sampsel was convicted by a jury of aggravated indecent liberties with a child, K.S.A. 21-3504(a)(1), a

severity level 3, person felony; battery against a law enforcement officer, K.S.A. 1996 Supp. 21-3413(a)(1), a class A person misdemeanor; and furnishing alcoholic liquor to a minor, K.S.A. 21-3610, a class B person misdemeanor.

In this appeal, Sampsel challenges only the liquor conviction, contending (1) his age of 19 years makes him also a minor who cannot be convicted under the liquor laws, and (2) the trial court erred in failing to instruct the jury on possession of an alcoholic beverage by a minor under K.S.A. 1995 Supp. 41-727 as a lesser included offense of furnishing alcohol to a minor.

The State cross-appeals the trial court's granting of a downward durational departure from 60 months to 40 months, contending (1) the sentencing court did not state substantial and compelling reasons that were supported by the record and (2) the departure was a result of partiality, prejudice, oppression, or corrupt motive.

## Facts

In November 1996, in the early evening hours, 14-year-old S.R. and 13-year-old A.C., both inexperienced in the consumption of alcohol, entered a home in Emporia occupied by Randall Ricketts, Chrysanne Tatman (18 years old), Kelly Minor (23 years old), and Omar Sampsel (19 years old).

Tatman testified that while at the residence in the early evening, and while drinking a beer, S.R. asked her if she could have sex with Sampsel. Tatman told S.R. Sampsel was not her boyfriend and she could do whatever she wanted. Tatman testified that before S.R. left the house at 8:30, the girls "were begging for sex, I can tell you that."

Evidence at the trial showed that S.R. and A.C. returned to S.R.'s house for approximately one-half hour but left around 9 p.m. after being told to be home by 11 p.m. After returning to the Ricketts residence, the same individuals were there with the exception of Minor. Trial testimony showed S.R. drank another beer followed by shots of bourbon, two being offered by Tatman, three by Sampsel, and two by S.R., who also drank from an open bottle. S.R. testified this was the first time she had met Sampsel and the first time she had drunk bourbon. She had drunk alcohol on one

prior occasion. She remembered kissing Sampsel and that they touched each other. She became dizzy and nauseated.

Tatman testified to seeing S.R. either naked or only wearing her underpants, in the bathroom being assisted by Sampsel, although S.R. had no recall of it. Sampsel advised Tatman that he had had sexual relations with S.R.

S.R.'s next recall was waking up on Tatman's bed with A.C. beside her and vomit on the bed. S.R. had her outer clothes on but later discovered her underwear was missing. She was taken home by two young women.

S.R. and A.C. arrived home at approximately 1:55 a.m. S.R.'s mother and her husband had been out looking for the girls since 11:30 p.m. S.R.'s mother testified that S.R. was giggling and using profanity and that she took her to a hospital where rape tests were performed. The examining physician testified that as a result of his observation of S.R.'s vaginal area, he told police he believed she had been raped.

Officer Paccapaniccia was dispatched to the hospital to investigate the matter. He testified S.R. and A.C. were obviously intoxicated. He informed Detective Schondelmaier of a possible rape and that the girls were under the influence of alcohol.

A search warrant for Ricketts' residence was executed around 8 a.m. the following morning, where S.R.'s undergarments were located. Sampsel was awakened and obviously still intoxicated. After being advised of his rights, Sampsel admitted to consensual sex with a girl whose name he did not remember. Officer Paccapaniccia testified defendant said: "he couldn't even remember the drunk bitch he fucked last night but it's nothing but a chicken wing"; "sex, drugs, and rock and roll"; when a detective picked up the bottle of Virgin Whiskey: "Virgin Whiskey, give that to a virgin and they're not a virgin much longer" (laughing); "If they are old enough to grow hair and bleed, they're old enough to breed and have sex."

Sampsel said a discussion had been held concerning his using protection but the girl was too drunk to know he had not done so. He said she actively participated in sexual intercourse. He said Ricketts had told him that S.R. was 16 years old but he was not

sure of her age. Sampsel made a written statement of his version of the events.

Sampsel was charged with aggravated indecent liberties with a child and furnishing alcohol to a minor. The battery against a law enforcement officer charge was precipitated by Sampsel spitting at and on an officer while on the way to incarceration.

After a jury trial, Sampsel was found guilty of all charges.

Sampsel's counsel moved for downward dispositional and durational departures from the Kansas Sentencing Guidelines Act (KSGA), requesting probation because the complainant was a voluntary participant and because the degree of harm was less than typical for such an offense, with medical attention being only necessitated by complainant's voluntary actions. The durational departure was requested to a presumptive sentence of not more than 24 months for the same reasons as made in the request for the dispositional departure.

## Sampsel's issues

*Can a minor be guilty of furnishing alcohol to another minor under K.S.A. 21-3610?*

Sampsel's first contention is that because he is 19 years old and therefore a minor, as defined under K.S.A. 41-102(p), he is among the class of persons intended to be protected by K.S.A. 21-3610 and not subject to punishment thereunder.

This question involves the interpretation of K.S.A. 21-3610, which is a question of law over which our review is de novo. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P. 2d 381 (1992). Our criminal statutes are construed against the State. *State v. Sexton*, 232 Kan. 539, 543, 657 P. 2d 43 (1983).

The applicable portion of K.S.A. 21-3610 relating to furnishing liquor to a minor states:

"(a) Furnishing alcoholic liquor to a minor is directly or indirectly, selling to, buying for, giving or furnishing any alcoholic liquor to any minor.

. . . .

"(c) As used in this section, terms have the meanings provided by K.S.A. 41-102 and amendments thereto."

Sampsel is correct that for purposes of the alcoholic liquor laws in Chapter 41 of the Kansas Statutes he is a minor. From this premise he makes the broad leap to argue that because such provisions were designed to prohibit adults from supplying alcohol to minors, it excludes him from the class of parties that can be prosecuted.

This argument and the cases Sampsel cites relating to the public policy against furnishing alcohol to minors fails to recognize the State's much more logical contention that K.S.A. 21-3610 makes it a criminal offense for *anyone* to furnish alcoholic liquor to a minor. K.S.A. 21-3610(d) does provide defenses to liability for licensed retailers, clubs, drinking establishments or caterers, or other parties with temporary permits who are furnished identification by individuals purporting to be 21 years or older, but there is no mention of limiting the scope of the statute to adults and excluding everyone under the age of 21 years.

There are no cases on this issue, probably because Sampsel's contention is simply erroneous. The language of this statute is clear that anyone serving alcoholic liquor to a minor can be charged with the violation of K.S.A. 21-3610. Sampsel furnished alcoholic liquor to S.R. He was found guilty of doing so by the jury. This argument has no merit.

Sampsel also argues the evidence did not sufficiently show the alcoholic liquor was actually furnished to S.R. by him. The evidence is clear that he poured S.R. several shots of bourbon. Under our standard of review, after we reviewed all the evidence, viewed in the light most favorable to the prosecution, we are convinced that the jury was clearly justified in finding Sampsel guilty beyond a reasonable doubt. *State v. Claiborne*, 262 Kan. 416, 425, 940 P.2d 27 (1997).

*The trial court did not err in failing to instruct the jury on possession or obtaining alcoholic beverages by a minor under K.S.A. 1995 Supp. 41-727 as a lesser included offense of furnishing alcoholic liquor to a minor.*

The trial court's duty to instruct on lesser included offenses is based on a view of the evidence in the light most favorable to the

defendant's theory if it would justify a jury verdict and the evidence does not exclude a theory of guilt on the lesser offense. *State v. Moncla,* 262 Kan. 58, 73-74, 936 P. 2d 727 (1997).

Sampsel makes a *State v. Fike,* 243 Kan. 365, 757 P. 2d 724 (1988) argument, contending the two-pronged test under K.S.A. 21-3107(2)(d) applies. Under that test, where the elements of the crime charged and the lesser crime are compared, and the statutory elements of the lesser crime are automatically proved if the State establishes the elements of the crime charged, then the lesser crime is a lesser included crime. If a lesser crime does not satisfy the first prong of *Fike,* it can still be a lesser included crime if the factual allegations in the charging document allege a lesser crime which does not meet the statutory elements test and the evidence that must be adduced at trial for the purpose of proving the crime as charged would also necessarily prove the lesser crime. *Fike,* 243 Kan. at 368.

The provisions of K.S.A. 21-3610 have previously been set forth. In alleging K.S.A. 1995 Supp. 41-727 is a lesser included crime, Sampsel points to its provisions that "no person under 21 years of age shall possess, consume, obtain, purchase or attempt to obtain or purchase alcoholic liquor or cereal malt beverage except as authorized by law," as making this a lesser included crime. Sampsel acknowledges that in comparing the two provisions, the statutory elements of K.S.A. 1995 Supp. 41-727 are not automatically proved when the required elements of K.S.A. 21-3610 are also proved. However, Sampsel argues that in order to prove he furnished alcohol to S.R., the State necessarily proved that he purchased, obtained, or possessed the liquor.

The State argues in opposition that the trial court was under no obligation to submit possession of an alcoholic beverage by a minor as a lesser included offense because possession of alcohol does not necessarily have to be proved to show that Sampsel furnished alcohol to S.R. The State also cites *State v. Josenberger,* 17 Kan. App. 2d 167, 836 P. 2d 11, *rev. denied* 251 Kan. 941 (1992), as support for its argument.

In *Josenberger,* the defendant argued that simple possession of marijuana is a lesser included offense of the sale of marijuana. In

disagreeing, the *Josenberger* court held that the factual allegations in the charging document did not allege a lesser crime of possession and the State did not necessarily have to prove the crime of possession in proving sale. 17 Kan. App. 2d at 175.

Under the facts of this case, the alcoholic liquor in question was never strictly in Sampsel's possession because evidence showed it was purchased and made available by someone else. He did clearly furnish the bourbon to S.R., as did others.

It is clear the charging document did not allege a lesser crime of possession, and the State did not have to prove the crime of possession in order to prove the crime of furnishing alcohol to a minor. This was the logic of *Josenberger* and is equally applicable here. In addition, the charging document did not require the State to prove that Sampsel was a minor to be found guilty under K.S.A. 21-3610, and while he was a minor as defined by K.S.A. 41-102(p), this was not a required element of proof. Under these analyses, the lesser included offense instruction was not required to be given. The conviction of furnishing alcohol to a minor is affirmed.

## State's cross-appeal

*Did the trial court have substantial and compelling reasons for departure or, in the alternative, was the departure the result of partiality, prejudice, oppression, or corrupt motive?*

K.S.A. 21-4721 provides that a departure sentence is subject to appeal by either the defendant or the State. Subsection (d) provides:

"[s]entence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:
  (1) [a]re supported by the evidence in the record; and
  (2) constitute substantial and compelling reasons for departure."

It is also proper in any appeal for the appellate court to review a claim that "[a] sentence that departs from the presumptive sentence resulted from partiality, prejudice, oppression or corrupt motive." K.S.A. 21-4721(e)(1). The Court of Appeals in *State v. Starks*, 20 Kan. App. 2d 179, 183, 885 P. 2d 387 (1994), relying on *State v. Heywood*, 245 Kan. 615, 620-21, 783 P.2d 890 (1989), held the burden is on the party making these claims and the scope of review

is whether the trial court's discretion is abused. Discretion is abused only when no reasonable person would take the view adopted by the trial court. We have also said that " 'if reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' " *State v. Stallings*, 262 Kan. 721, 726, 942 P.2d 11 (1997).

The landmark Kansas case dealing with downward departures, *State v. Favela*, 259 Kan. 215, Syl. ¶ 6, 911 P.2d 792 (1996), states: "A claim that the departure factors relied upon by the sentencing court do not constitute substantial and compelling reasons for departure is a question of law." *Favela* interpreted K.S.A. 1994 Supp. 21-4719(b)(1) to give appellate courts authority to review the extent of downward durational departures and reasoned that "since the power to review the extent of departures is based on a mere inference, an appellate court should not give itself more power than the legislature intended, and the review should be limited to the weakest type of review—abuse of discretion." *Favela*, 259 Kan. 215, Syl. ¶ 9.

Sampsel's motion for a dispositional and durational departure from the KSGA sentence of 60 months' imprisonment under a criminal history score of category "G" crime severity level 3, alleged in part:

"(a) The complainant was a voluntary participant in the conduct associated with the crime of conviction. The evidence adduced at Defendant's trial was that the said complainant willingly consumed alcoholic beverages, voluntarily engaged in amorous conduct with Defendant, was not coerced nor forced to engage in sexual intercourse with Defendant and openly expressed her desire to do so.

"(b) That the degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense. The evidence adduced at Defendant's trial established that the aforesaid complainant did not sustain significant injuries during the commission of the offense, and that any medical attention afforded to the said complainant was routine in nature and was necessitated only as a result of complainant's voluntary actions."

Sampsel's motion alternatively asked that if his requested dispositional departure was denied, the presumptive sentence should be reduced to not more than 24 months' incarceration.

These allegations substantially followed the statutory nonexclusive list of mitigating factors that may be considered to determine whether substantial and compelling reasons for a departure exist. This list is set forth in K.S.A. 1998 Supp. 21-4716(b)(1):

"(A) The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction.

. . . .

"(E) The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense."

K.S.A. 1998 Supp. 21-4716 further provides:

"(c) In determining aggravating or mitigating circumstances, the court shall consider:
(1) Any evidence received during the proceeding,
(2) the presentence report;
(3) written briefs and oral arguments of either the state or counsel for the defendant; and
(4) any other evidence relevant to such aggravating or mitigating circumstances that the court finds trustworthy and reliable."

The sentencing judge had heard all the testimony at Sampsel's trial. But, S.R. also testified briefly at the sentencing hearing where she admitted to not having suffered injuries, would not admit to having expressed a desire for sexual contact, showed little recollection of the events, and did not recall having been forced by anyone to have sexual intercourse.

Sampsel's counsel's arguments centered on the two sections of K.S.A. 1998 Supp. 21-4716 recited in his motion and set forth above. First, that the victim was a voluntary and active participant and that she was not physically injured. Community corrections was requested or, alternatively, for a durational departure to not more than 24 months.

At the sentencing hearing, Sampsel stated S.R. did want to have sex and became intoxicated. He admitted to having a drinking problem and apologized for the things he had said.

Sampsel's mother was allowed to make a statement. She made excuses for her son's actions and suggested worse crimes had resulted in less sentences than 5 years.

The county attorney pointed to Sampsel being 19 years old and the victim being 14 years old, contended consent was not an issue, and centered on the results of furnishing alcohol to minors and Sampsel's crude and unfeeling comments at the time of his arrest. The State took issue with Sampsel's counsel's argument that the degree of harm was less than typical for such an offense because HIV testing had been requested and its results were unknown. The county attorney finally argued that the remorse Sampsel has is for the consequences he faces, not his actions, and this was not a case where a departure was justified.

In rebuttal, Sampsel's counsel argued that voluntary participation was shown by S.R. asking for a condom which showed she knew what she was doing and they had met the mitigating factor in the statute.

The sentencing court then stated:

"THE COURT: Well, from my point of view, I believe that — I've been coming down here for a few months, and I think that this young lady, [S.R.], in one fashion or another has been involved in at least four or five of the jury trials that I've heard. She's either a witness or she's a victim or whatever. I certainly agree with you, Mr. Lee [county attorney], the defendant's behavior at the time of the arrest and thereafter, with all of his smart remarks, and so forth, they don't—aren't appealing to me.

"But the other thing that doesn't appeal to me is that this law is supposed to protect children, I agree it's supposed to protect them, but when you get a victim like the victim involved in this case, hell, she doesn't want to be protected, she wants to be—you know, there's too many women in this courtroom or I would use the word—she wants to go to bed, she wants to have sex, she wants to screw everybody. That's what she wants to do. And so I can't feel any great compassion for her, that's for sure. But I also know what the law is. And, you know, this young man violated that law, right or wrong, and so forth.

"I'm not going to deviate on the departure to the point of Community Corrections, probation, or anything else, but I am going to kick some of the—the months off of the sentence, and even though I don't like this young man's prior criminal history and prior behavior and the behavior at the time that he was arrested in this case. And the only thing I've got to say about that is, whatever his past criminal history and what he's going to serve as a result of this crime, and looking at his history, he'll come back and he'll be back.

"So I'm going to, if I can go right into what I'm going to do, I'm going to reduce the 60 months down to 40 months. And I want HIV testing. I want whatever else

the State might want regarding that. And that's basically the ruling of the Court. And I want him to stay in jail and be shipped off."

The trial court additionally sentenced Sampsel to 6 months in the county jail for furnishing alcohol to a minor to be served concurrent with the indecent liberties sentence. The sentence for battery of a law enforcement officer was set at 12 months in the county jail to be served consecutive to the other sentences.

Sampsel's counsel asked that the battery sentence not be served consecutively, but the trial court said it was a separate incident and suggested that when Sampsel is released from prison someone could then argue on his behalf that the time he had done is sufficient to fulfill the obligation.

The journal entry of judgment entered on the day of sentencing ordered the downward durational departure. The sentencing judge gave the following reasons for the departure: "Duration departure, because of victim behavior, her consent to participate, other activity along this line. Victim was a participant in this matter."

The State makes a two-prong argument in asking for reversal of the trial court: First, that the court failed to state facts that support substantial and compelling reasons for departure. Additionally, the State submits that remarks of the sentencing judge in the present case and remarks made later on the same day in a separate case in Lyon County, *State v. Minor*, case No. 96CR419, showed prejudice against the victim reflecting bias, partiality, and prejudice.

Sampsel relies on the broad holding of *State v. Favela*, 259 Kan. 215, pointing out that K.S.A. 21-4728 states the Kansas Sentencing Guidelines Act should "permit a sentence appropriate for each individual case," and argues one of the purposes of sentencing guidelines is to reduce prison overcrowding by reserving space in prison for serious/violent offenders who present a threat to public safety.

Sampsel further contends the factual basis for the existence of the mitigating factors of K.S.A. 1998 Supp. 21-4716(b)(1)(A) of participation was clearly shown. While the State argued that consent was not an issue, it failed to recognize that *State v. Rush*, 24 Kan. App. 2d 113, 115-16, 942 P.2d 55 (1997), holds that the will-

ing participation of a female victim, while no defense to a charge of statutory rape, may properly be considered in imposing punishment, and constitutes a substantial and compelling reason for departure as a matter of law, Sampsel cited K.S.A. 21-4716(b)(1)(A) and *State v. Rush* to argue this point.

Sampsel says there is no basis for the State's claim of partiality and prejudice, because comments in a later case on the same day involving a different defendant and a different victim could not be the erroneous cause of a departure sentence previously announced. Sampsel quoted our statement from *State v. Gideon*, 257 Kan. 591, 623, 894 P.2d 850 (1995), that "the court's comments at the time of sentencing govern as to the reasons for departure." This would prohibit usage of any statements from a case later decided.

Finally, Sampsel argues that his conduct has not been excused. He must serve 3 years and 4 months in prison, followed by 12 months in the county jail. The court refused Sampsel's requested dispositional departure and imposed a prison sentence which was deemed appropriate based on the facts of this case. Sampsel admits some of the court's language was not very articulate and might be considered uncouth, but he argues the actions were within the discretion granted by the sentencing guidelines which was not abused by the trial court.

The result we reach on the State's cross-appeal is in a large part based on our standard of review broadly established in *State v. Favela*, 259 Kan. 215. In *Favela*, we reversed a split Court of Appeals decision reported at 21 Kan. App. 2d 202, 898 P.2d 1165 (1995), that had sought to limit a trial court's discretion in entering downward dispositional and durational departures. The Kansas Legislature has met for three sessions following our *Favela* decision and has not seen fit to reign in or restrict the trial court's discretion relating to dispositional and durational departures, thus *Favela* is the basis for which we consider the trial court's actions.

*Favela* involved both a downward durational and dispositional departure of a plea to attempted second-degree murder from a presumptive prison sentence of 51 to 59 months down to 14 months, with Favela placed in community corrections for 36 months. The Court of Appeals held the reasons for departure were

not substantial and compelling. 21 Kan. App. 2d at 212. Our court reversed and reinstated the sentence the trial court ordered. In doing so, we spoke broadly concerning the discretion of trial judges to impose "a sentence which was proportionate to the severity of the crime of conviction and the offender's criminal history." 259 Kan. at 244. See K.S.A. 21-4719.

We held in *Favela* that " 'the sentencing court was not required to provide separate reasons for the dispositional and durational departures in this instance.' " 259 Kan. at 221. We also noted the trial court did not usurp the powers of the prosecutor by suggesting all the facts showed was in reality an aggravated assault case which is a level 7 felony with a criminal history of H and computes to the 14 months' sentence entered by the trial court. 259 Kan. at 221.

In reviewing the departure sentence, our *Favela* opinion looked to the six reasons for departure in the defendant's motions and in response to the State's argument of lack of evidence in the record. It concerned a self-serving statement of defense counsel that pointed out the following broad and expansive wording of K.S.A. 21-4716(c): " 'oral arguments of either the state or counsel for the defendant' " and " 'any other evidence relevant to such aggravating or mitigating circumstances that the court finds trustworthy and reliable.' " 259 Kan. at 228. The statute quoted and the *Favela* wording specifically allow us not only to consider the testimony at trial as well as at the sentencing hearing, but also the oral arguments of counsel for the defendant.

The reasons alleged by Favela were summarized as relating to his age and his immaturity, his prior record, and the fact that his brother had been stabbed, the victim was at least a participant in the underlying event, no harm resulted, and this was significantly less than typical for such an offense. These situations were relied upon by the trial court and approved in the *Favela* opinion as justification for the dual departures.

In response to the question as to what constitute substantial and compelling reasons for departure, *Favela* stated:

"[T]he legislature did give some guidance in making the determination whether reasons justifying departure are substantial and compelling.

"K.S.A. 1994 Supp. 21-4719(b)(1) states:

'(b) When a sentencing judge departs in setting the *duration of a presumptive term* of imprisonment: (1) The judge shall *consider and apply the enacted purposes and principles of sentencing guidelines* to impose a sentence which is proportionate to the severity of the crime of conviction and the offender's criminal history.' (Emphasis added).

"The Kansas Legislature did not specifically provide statutory purposes and objectives for the sentencing guidelines. However, the Court of Appeals points to the principles and purposes which the guidelines are based upon according to legislative history. These principles are:

'• Prison space should be reserved for serious/violent offenders.

'• The degree of sanctions imposed should be based on the harm inflicted.

'• Sanction should be uniform and not related to socioeconomic factors, race, or geographic location.

'• Penalties should be clear so everyone can understand exactly what has occurred after such are imposed.

'• Incarceration should be reserved for serious violent offenders who present a threat to public safety.

'• The State has an obligation to rehabilitate those incarcerated; but persons should not be sent to prison solely to gain education or job skills, as these programs should be available in the local community.

'• The system must be rational to allow policymakers to allocate resources. See Coates, Summary of the Recommendations of the Sentencing Commission, p. 6-7 (Report to Senate Committee on Judiciary, January 14, 1992). See also Kansas Sentencing Guidelines Implementation Manual (1992), p. i-1-2 (restating the goal and assumptions upon which the guidelines are grounded).' 21 Kan. App. 2d at 210.

"Further, this court has recognized three legislative purposes of the guidelines—(1) reduce prison overcrowding, (2) protect public safety, and (3) standardize sentences so similarly situated offenders are treated the same in order to reduce the effects of racial or geographic bias. *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994)." 259 Kan. at 233-34.

The factors considered were then found to be substantial and compelling.

Finally, *Favela* held that while an argument could be made that the extent of the departure is without statutory limitation, we do have jurisdiction to review the extent of downward durational departures. *Favela* stated that deference should be granted to the sentencing judge, who had first-hand experience with the defendant and the facts of the case, in determining the extent of the departure. 259 Kan. at 243. The standard of review is an abuse of discretion. A trial court abuses its discretion only if no reasonable

person could agree with the trial court. *State v. Griffin*, 246 Kan. 320, 326, 787 P.2d 701 (1990), and *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124 (1988). These cases state that if any reasonable person could agree with the trial court, the appellate court will not disturb the trial court's discretion. Under these standards, the trial court's departures were upheld in *Favela*.

The broad implications and holding of *Favela* were viewed as restricting the power of appellate courts to review downward departures by trial courts. See Lewis, *The Kansas Sentencing Guidelines Act*, 38 Washburn L. J. 327, 370 (1999). Judge Lewis, a judge of the Kansas Court of Appeals and a member of the Kansas Sentencing Commission, suggested that *Favela,* in recognizing that 21-4716(c)(3) allows *oral arguments of either the State or counsel for the defendant* to be considered in determining aggravating or mitigating circumstances, has the effect of making self-serving statements of defense counsel evidence. Judge Lewis further stated: "This is a remarkable departure from what had been the law of this state and definitely eases proving the facts to justify a downward departure." 38 Washburn L. J. at 373.

There is additional wording in *Favela* that was recognized by our court in *State v. Bailey*, 263 Kan. 685, 698-99, 952 P.2d 1289 (1998), as adopting the rule that when a sentencing court relied on statutory aggravating or mitigating factors to depart (as occurred in Sampsel's case), these reasons should be given great deference by a reviewing court. Although neither of the reasons given for upward departure in *Bailey* were statutory factors, and the defendant there was contending nonstatutory factors were subject to greater scrutiny, we recognized the following quoted passage from the Court of Appeals' concurring and dissenting opinion in *Favela:*

" ' "Cases in which the sentencing court does not rely upon any statutory aggravating or mitigating factors to depart should be viewed with a stricter scrutiny. However, when the sentencing court relies upon statutory aggravating or mitigating factors to depart, these reasons should be given great deference by a reviewing court." 21 Kan. App. 2d at 215.' 259 Kan. at 238." 263 Kan. at 698.

Our *Bailey* opinion went on to state: "Although it [the *Favela* opinion] did not expressly adopt this rule, the court's quoting the

passage from the concurring and dissenting opinion would indicate agreement with it." 263 Kan. at 699.

The factors upon which the departure was based in Sampsel's case are those enumerated in K.S.A. 1998 Supp. 21-4716(b)(1)(A), and (E), and under *Favela* and *Bailey* are entitled to "great deference."

Several additional Kansas cases deserve mention. What is substantial and compelling was defined in *State v. Rhoads*, 20 Kan. App. 2d 790, 799-800, 892 P.2d 918 (1995), in the following manner:

"The term 'substantial' here refers to something that is real, not imagined, something with substance and not ephemeral. The term 'compelling' here implies that a court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary. Examples of the term can be found in *State v. Phillips*, 252 Kan. 937, 943, 850 P.2d 877 (1993), where aggravating circumstances can 'compel' the outweighing of mitigating circumstances; *State v. Macomber*, 244 Kan. 396, 405, 769 P.2d 621, *cert. denied* 493 U.S. 842 (1989), which holds that a trial court must have articulable 'compelling' reasons for not using PIK instructions; and *State v. Williams*, 15 Kan. App. 2d 656, 666, 815 P.2d 569 (1991), which states some 'compelling need' must exist for the State to be allowed to obtain certain types of body fluids from a defendant."

A reason such as "extensive criminal history" was not deemed sufficient in *Rhoads* for a departure. While the sentencing judge's remarks here are imprecise, there is a statement that the victim was a voluntary participant and in the sentencing judge's written reasons consent was recognized, plus it was specifically stated that the "victim was a·participant." The trial testimony as well as the sentencing testimony amplified by the defense counsel's arguments support this finding, which is substantial and compelling.

Another recent Kansas case of note is *State v. Rush*, 24 Kan. 113, 924 P.2d 55 (1997). In *Rush*, a presumptive sentence for the crime of rape under K.S.A. 21-3502(a)(2) of 86 to 96 months was the subject of a granted departure motion reducing defendant's sentence to 40 months' imprisonment. This exercise of the trial court's discretion was affirmed by our Court of Appeals which held that although a minor (under 14 years of age) female victim's aggressiveness in leading up to an act of sexual intercourse is not a

defense to a rape charge pursuant to K.S.A. 21-3502(a)(2), it may properly be considered in imposing punishment.

*Favela* was relied upon. The statements as to what is substantial and compelling from *Rhoads* quoted above were deemed governing.

The *Rush* opinion held that the fact the victim was aggressive is a sufficient finding under K.S.A. 21-4716(b)(1)(A) by itself to be a substantial and compelling reason to depart. The wording of K.S.A. 21-4719(b) relating to imposing a sentence proportionate to severity was quoted.

The single authority from outside Kansas relied on in the *Rush* opinion was *State v. Stiffler*, 114 Idaho 935, 938, 763 P.2d 308 (Ct. App. 1988), *aff'd* 117 Idaho 405, 788 P.2d 220 (1990). *Stiffler* held that while the aggressive acts of a victim leading to intercourse are not a defense to a rape charge, they may properly be considered in imposing punishment. The *Rush* decision applied to the facts of our case shows support for holding that minor female's aggressive actions in leading up to an act of sexual intercourse, although not a defense to a charge of aggravated indecent liberties with a child pursuant to K.S.A. 21-3504(a)(1), may properly be considered by the trial court in determining whether to grant a requested departure.

The trial court's statements in this case, which are fully set forth previously, are admittedly crude and intemperate. There is, however, evidence in the record, based on Tatman's testimony and Sampsel's self-serving statements, to affirm. We do not find an abuse of discretion from the trial court's findings that the mitigating factor of K.S.A. 21-4716(b)(1)(A) of substantial and compelling reasons for departure exist where the victim, S.R., was a participant in the criminal conduct associated with the crime of conviction. The evidence was clearly mixed on the other claimed reason for departure, *i.e.*, that "[t]he degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense." K.S.A. 21-4716(b)(1(E). There is no wording in the trial court's findings or written reasons that can be relied upon to uphold application of this statutory provision.

This gives rise to the necessity of considering if a single substantial and compelling reason may justify a departure sentence. In *State v. Zuck*, 21 Kan. App. 2d 597, 606, 904 P.2d 1005, *rev. denied* 258 Kan. 863 (1995), an upward departure sentence in an attempted rape case from a presumptive sentence of 43 months to 62 months was approved on appeal. The standard of review of *State v. Gideon*, 257 Kan. 591, 894 P.2d 850 (1995), was restated. The emotional problems suffered by the victim were deemed sufficiently severe to warrant a departure. However, because clear statutory language did not indicate otherwise, the age of the victim was not deemed to be a substantial and compelling factor. This led to approval of the departure because while not all of the reasons given were sufficient, the departure was justified if one or more of the factors relied upon was found to be substantial and compelling. The *Zuck* court stated: "In Kansas, there is no legal requirement that all the reasons given by a sentencing court to support a departure sentence be substantial and compelling if one or more of such factors relied upon is substantial and compelling *State v. Gideon*, 257 Kan. 591, 627, 894 P.2d 850 (1995)." 21 Kan. App. 2d at 606.

Although only a single substantial and compelling factor was found by the trial court to exist, this was deemed sufficient to allow an upward departure in *Zuck*, which relied on *Gideon*, and this rule must likewise be applied to downward departures.

The State's arguments fail when tested by the language and holdings of *Favela, Bailey, Rhoads, Rush,* and *Zuck*. There were substantial and compelling statutory factors based on substantial and competent evidence to show the trial court did not abuse its discretion in entering the downward departure sentence in this case.

The State's final argument is that the remarks of the sentencing judge in this case and another case in Lyon County, *State v. Minor*, case No. 96CR419, on the same day showed prejudice against the victim, bias, and partiality.

The statutory basis for this argument is set forth in K.S.A. 21-4721, which relates to appeals of departure sentences and states in applicable part: "(e) In any appeal, the appellate court may review a claim that: (1) A sentence that departs from the presumptive

sentence resulted from partiality, prejudice, oppression or corrupt motive."

Sampsel argues that the State's argument regarding the *Minor* case is not properly before the court based on the lack of a causal relationship because it is not argued that the sentence in his case resulted from partiality and prejudice. What is contended, Sampsel argues, is that comments in a later case involving a different defendant and a different victim could somehow affect a departure sentence that has already been announced.

Sampsel also relies on our statement in *Gideon* that "the court's comments at the time of sentencing govern as to the reasons for departure." 257 Kan. at 623.

We do not approve of the sentencing judge's crude and undignified comments. They have resulted in a finding that the judge violated Canons of Judicial Conduct 2A (1999 Kan. Ct. R. Annot. 465) ("A judge shall . . . act at all times in a manner that promotes public confidence in the integrity . . . of the judiciary.") and 3B(4) (1999 Kan. Ct. R. Annot. 446) ("A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity . . . ."). See State of Kansas, Before The Commission on Judicial Qualifications, Inquiry Concerning a Judge, Docket No. 645, filed June 12, 1997. This finding and the resulting discipline does not invalidate the findings and rulings of the sentencing court, nor does it show the departure was the result of partiality, prejudice, oppression or corrupt motive.

The trial court was equally appalled by the actions of both Sampsel and S.R. He commented that Sampsel's behavior did not appeal to him but that the law was not protecting the victim like it should because of her actions. It may have been an inarticulate comment on the actions of the parties, but it does not show partiality, prejudice, oppression, or corrupt motive to require that Sampsel be resentenced.

The dispositional departure requested *was* denied and confinement with the Department of Corrections was required. The battery misdemeanor sentence of 12 months in the county jail was ordered to be served consecutive to the 40 months' prison sen-

tencing, resulting in a total confinement term of 52 months. If the misdemeanor sentences had been allowed to run concurrently with the felony sentence and departure had not been allowed, the sentence would have been 60 months. HIV testing to protect the victim was ordered.

We would hope that no other sentencing judge would use the language found in this case, and the judge has been disciplined for doing so, but the overriding result is that there was no showing of partiality, prejudice, oppression, or corrupt motive and no abuse of the trial court's discretion.

Finally, the remarks of the sentencing judge in another case may not be considered to relate to this defendant and this victim.

The conviction of furnishing alcoholic liquor to a minor is affirmed. The departure sentence is affirmed.

McFARLAND, C.J., concurring in part and dissenting in part: I concur in that portion of the majority opinion which affirms defendant's conviction of furnishing alcoholic liquor to a minor. I dissent from the majority opinion's affirmance of the downward durational departure sentence imposed on defendant's conviction of aggravated indecent liberties with a child.

The sentencing guidelines were intended to and do significantly restrict a trial court's discretion in sentencing. The legislature has determined the presumptive sentence for each offense, factoring in the particular defendant's criminal history. A judge may depart from the presumptive sentence but only if in compliance with the relevant statutory provisions.

K.S.A. 1998 Supp. 21-4716 provides in pertinent part:

"(a) The sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines for crimes committed on or after July 1, 1993, unless the judge finds substantial and compelling reasons to impose a departure. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure.

K.S.A. 21-4721 concerns appellate review of departure sentences and provides in pertinent part:

"(d) In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, sentence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:
(1) Are supported by the evidence in the record; and
(2) constitute substantial and compelling reasons for departure."

Whether the factors relied upon by the court constitute substantial and compelling reasons for departure is a question of law. The court must state on the record at the time of sentencing the substantial and compelling reasons for the departure. The court's comments at the time of sentencing govern as to the reasons for departure. *State v. Jackson*, 262 Kan. 119, 134-35, 936 P.2d 761 (1997).

The term "substantial" refers to something that is real, not imagined, something with substance and not ephemeral. The term "compelling" implies that the court is forced, by the facts of the case, to leave the status quo or go beyond what is ordinary. *State v. Eisele*, 262 Kan. 80, 84, 936 P.2d 742 (1997).

The factor the majority opinion finds to be legally sufficient herein to support the downward departure is K.S.A. 1998 Supp. 21-4716(b)(1)(A), which provides: "The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction."

The legislature has determined the presumptive sentence herein. Only if there is a substantial reason that is so out of the ordinary that it compels imposition of a greater or lesser sentence may the court depart from the presumptive sentence. The majority concludes the sentencing court's downward departure sentence is supported by the factor that the victim participated in the crime.

The narrow issue before this court is whether the sentencing court's findings of fact and reasons justifying a downward durational departure are (1) supported by the evidence in the record and (2) constitute substantial and compelling reasons for departure.

The sentencing judge was required to state his reason or reasons for departure. The court's comments are what the appellate court reviews.

In their entirety, these comments are set forth as follows:

"THE COURT: Well, from my point of view, I believe that — I've been coming down here for a few months, and I think that this young lady, [S.R.], in one fashion or another has been involved in at least four or five of the jury trials that I've heard. She's either a witness or she's a victim or whatever. I certainly agree with you, Mr. Lee [county attorney], the defendant's behavior at the time of the arrest and thereafter, with all of his smart remarks, and so forth, they don't—aren't appealing to me.

"But the other thing that doesn't appeal to me is that this law is supposed to protect children, I agree it's supposed to protect them, but when you get a victim like the victim involved in this case, hell, she doesn't want to be protected, she wants to be—you know, there's too many women in this courtroom or I would use the word—she wants to go to bed, she wants to have sex, she wants to screw everybody. That's what she wants to do. And so I can't feel any great compassion for her, that's for sure. But I also know what the law is. And, you know, this young man violated that law, right or wrong, and so forth.

"I'm not going to deviate on the departure to the point of Community Corrections, probation, or anything else, but I am going to kick some of the—the months off of the sentence, and even though I don't like this young man's prior criminal history and prior behavior and the behavior at the time that he was arrested in this case. And the only thing I've got to say about that is, whatever his past criminal history and what he's going to serve as a result of this crime, and looking at his history, he'll come back and he'll be back.

"So I'm going to, if I can go right into what I'm going to do, I'm going to reduce the 60 months down to 40 months. And I want HIV testing. I want whatever else the State might want regarding that. And that's basically the ruling of the Court. And I want him to stay in jail and be shipped off."

As far as the court was concerned, the sentencing was completed. Counsel for the State tactfully reminded the court that there were the two misdemeanors on which sentencing awaited and that, on the felony, only the departure issue had been decided. The judge entered sentence on the misdemeanors and stated he had nothing further to add on the felony sentence.

Leaving for the moment any discussion of the appalling and unjudicial nature of the trial judge's comments, let us analyze his statement. By his own words, the trial judge found no reason for departure in anything about defendant or his conduct. Neither did the sentencing judge state his departure sentence was based on the victim being a participant. He departed from the presumptive sentence solely on the basis that this victim had been involved in other

unspecified jury trials as a victim, witness, or "whatever" and "wants to screw everybody." There is no support for these statements in the record. The judge seemed to see the victim herein not as an individual but as some sort of generic stereotype of a promiscuous young girl. Applying the statutory standard of review, is this "finding" supported by the record and does it constitute a substantial and compelling reason for departure? The answer should be a resounding no.

Let us look at the facts herein. On November 9, 1996, two minor girls, S.R. (age 14) and A.C. (age 13), went to a residence on West Street in Emporia and sat in the living room. Two residents of the house were present, Chrysanne Tatman and Randall Ricketts. Defendant was also in the living room. Defendant, age 19, started plying S.R. with beer and "Virgin" brand bourbon. This was the first time S.R. had met defendant and the first time S.R. had drunk bourbon. She had had alcohol on one prior occasion. S.R. remembers kissing defendant. She became dizzy and nauseated. Tatman testified to seeing the intoxicated girl, either naked or only wearing her underpants, in the bathroom assisted by defendant, although S.R. has no recall thereof. S.R.'s next recall was waking up on Tatman's bed with A.C. beside her and vomit on the bed. S.R. had her outer clothes on but later discovered that her underwear was missing. She was taken home by two young women. Because of S.R.'s condition, her mother took her to a local hospital. The examining physician testified that as a result of his observation of the condition of her vaginal area, he told police he believed S.R. had been raped. Defendant advised Tatman that night that he had had sexual relations with S.R.

Defendant was still at the residence when police officers served a search warrant. Officers testified defendant said the following: "he couldn't even remember the drunk bitch he fucked last night but it's nothing but a chicken wing"; "sex, drugs, and rock and roll"; when a detective picked up the bottle of Virgin Whiskey: "Virgin Whiskey, give that to a virgin and they're not a virgin much longer" (laughing); "If they are old enough to grow hair and bleed, they're old enough to breed and have sex." Defendant also told officers the intercourse with S.R. was consensual.

At the hearing on his motion for a downward durational or dispositional departure, defendant called S.R. as a witness. She was consistent with her trial testimony which was that she became drunk on bourbon given her by defendant (and Tatman), never consented to intercourse, and had no recall of the sexual act.

It is undisputed that 14-year-old S.R. was so intoxicated on bourbon supplied by defendant that she had no recall of the sexual intercourse. Defendant's statement at sentencing that S.R. wanted to have sex with him is inconsistent with his statements made to the police officers at the time of his arrest concerning getting S.R. drunk in order to have sex with her. Tatman's comments that the victim had indicated earlier that she wanted to have sex with defendant is highly suspect due to her own culpability of supplying liquor to the minor victim and the sexual act occurring in Tatman's residence. Tatman was aware of what was occurring with the minor girl.

By his own words, defendant intentionally caused the minor victim to become so intoxicated she did not resist his sexual advances. It is undisputed the victim was so drunk she had no recall of the sexual act. This is the so-called participation by the victim which the majority opinion finds compelled the sentencing court to enter a downward departure sentence.

Measured by any yardstick or legal standard, this is a legally inadequate basis for departure from the presumptive sentence. The sentence should be vacated on this basis alone.

This however cannot end the discussion. The sentencing judge's gutter language and total disregard for his judicial role resulted in a sentencing lacking even the most elemental indicia of a fair and impartial judicial proceeding.

The judge herein was disciplined by the Commission on Judicial Qualifications for his handling of this sentencing hearing, upon the findings he violated Canon 2A and Canon 3B(4) of the Code of Judicial Conduct which provide:

"Canon 2

"*A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities*

"A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Supreme Court Rule 601A (1999 Kan. Ct. R. Annot. 465).

"Canon 3

*"A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently*

. . . .

"[B] (4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials and others subject to the judge's direction and control." Supreme Court Rule 601A (1999 Kan. Ct. R. Annot. 466-67).

Further, our Preamble to the Code of Judicial Conduct reiterates the importance of judicial decorum:

"Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all sections of this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law." Rule 601A (1999 Kan. Ct. R. Annot. 461).

Recently, in *State v. Scales*, 261 Kan. 734, 933 P.2d 737 (1997), in a unanimous opinion authored by Justice Davis on petition for review from the Court of Appeals, we vacated a trial court's imposition of a maximum presumptive sentence due to judicial misconduct. Although the underlying facts of that case involved a judge's ex parte communication with the victim's family, a situation not involved here, our discussion about judicial decorum and conduct still applies and is equally applicable to the judicial misconduct here.

In *Scales*, the defendant appealed his sentence, alleging that it was imposed as a result of partiality, prejudice, oppression, or corrupt motive and amounted to an abuse of discretion. While the Court of Appeals acknowledged that the trial court's ex parte communication violated the Code of Judicial Conduct, it nonetheless concluded that the defendant had failed to prove an abuse of discretion. We disagreed, noting that "we need look no further than

the nature of the hearing that took place upon sentencing to conclude that the proceeding was inherently unfair." 261 Kan. at 738. While not all ex parte communications with a trial court require reversal, we held the communications in *Scales* "undermine any confidence we have in the impartiality of the sentencing proceeding." 261 Kan. at 738. The judicial misconduct in the case before us here is far more egregious than that in *Scales*.

Impartiality is at the foundation of our criminal justice system and applies equally to both the State and the defendant. We quoted Justice Cardozo in *Scales*, as follows:

"Justice Cardozo emphasizes the importance of the appearance of impartiality: 'One of the most fundamental social interests is that law shall be uniform and impartial. There must be nothing in its action that savors of prejudice or favor or even arbitrary whim or fitfulness.' Cardozo, The Nature of the Judicial Process, p. 112 (1921), as quoted in Shaman [Lubert & Alfini], Judicial Conduct and Ethics § 3.01 ([2d ed.] 1995)." 261 Kan. at 739.

Returning to the source of the above quote, we find that Shaman also stated:

"Because a judge's courtroom conduct symbolizes the law in action, a judge compromises the notion that the law is uniform and impartial in its application by failing to adhere to the dictates of those provisions of the Code dealing with a judge's behavior in performing his or her adjudicative responsibilities, particularly those of Canon 3B of the 1990 Model Code . . . ." Shaman, Lubert & Alfini, Judicial Conduct and Ethics § 3.01 (2d ed. 1995).

The downward departure sentence was clearly grounded in the trial court's prejudice and bias against the victim. He viewed her as a stereotype of a young slut whose conduct resulted in men getting into trouble with the law. There is nothing in the record that this young victim was in any respect like the judge's stereotype of her. This unbelievably off-the-wall reasoning harkens back to an earlier time when female sexual victims were portrayed as wantons who just got the treatment they deserved. Defendant plied her with alcohol so he could have sex with her. There is no evidence at all supporting the judge's comment "she wants to screw everybody." Indeed, there is no evidence of her knowingly having had sexual relations with anybody.

The judge's conduct and comments made an insulting and demeaning shambles of the proceeding. This judge's comments show an incredible prejudice and oppression against the minor victim herein. This court's judicial duty is to strive to enhance and maintain confidence in our legal system.

The only thing substantial and compelling in this case is the need to vacate the sentence imposed and to remand this case for resentencing before an impartial judge who will conduct the proceeding with judicial decorum, hear all relevant evidence, and make such findings as he or she may deem appropriate concerning whether a legally factual basis exists which compels a downward durational departure.