NOT DESIGNATED FOR PUBLICATION

No. 128,408

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

MAISON MICHAEL DEVRIES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; CHRISTINA DUNN GYLLENBORG, judge. Oral argument held September 16, 2025. Opinion filed December 19, 2025. Sentence vacated and case remanded with directions.

*Daniel G. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Peter R. Glasser*, of Law Office of Peter R. Glasser, of Overland Park, for appellee.

Before ARNOLD-BURGER, P.J., HURST, J., and JACOB PETERSON, District Judge, assigned.

PER CURIAM:  A "presumptive prison" sentence under the Kansas sentencing statutes refers to imprisonment as the default or expected sentence for a person falling into a particular grid box based on their crime and their criminal history. However, Kansas law allows judges discretion to depart from this presumptive sentence under certain circumstances, including reducing the sentence duration or granting probation instead of imprisonment, provided there are substantial and compelling reasons to justify such a departure. Maison Michael Devries was granted such a departure and the State

1

appeals, arguing that the judge abused her discretion. We agree and reverse the district court's departure ruling, vacate the sentence, and remand the case for resentencing.

FACTUAL AND PROCEDURAL HISTORY

In the early morning hours of a December day in 2021, Overland Park police officers responded to a crash involving two vehicles. Upon arrival, officers identified Chad Wagner and Devries as the drivers of each vehicle. Wagner was in severe pain, bleeding heavily from his mouth and nose; he fell unconscious while the officers were on scene. Wagner was transported to the hospital by ambulance with significant injuries.

As for Devries, the officers noticed a strong odor of alcohol coming from his breath and the odor of marijuana coming from his vehicle. Additionally, Devries made several incoherent and confusing statements, and his eyes were bloodshot and watery, leading the officers to arrest him for driving under the influence (DUI). Upon searching his vehicle, officers found a small amount of marijuana, a loaded handgun, and several broken beer bottles in the back of the vehicle. Devries later consented to a blood draw at the hospital, which showed a .16 blood alcohol level within three hours of the collision.

Upon his arrest, over a year later, Devries was placed on pretrial supervision. Six months later, his house arrest officer notified the court that for the preceding six months *every* drug test he had submitted had been positive for marijuana. Devries admitted to the continued use of marijuana, indicating that his last drug use was September 1, 2023. However, he submitted a positive drug test on September 11, 2023. There is nothing in the record to indicate that his bond was revoked for these violations.

Devries ultimately agreed to plead no contest to one count of aggravated battery DUI in violation of K.S.A. 8-1567 and K.S.A. 21-5413(b)(3)(A). In exchange, the State agreed to dismiss other charges, including a felony criminal damage to property charge

2

and misdemeanor charges for carrying a weapon under the influence of alcohol and possession of marijuana. The parties reached no agreement regarding sentencing. The district judge accepted his plea and found him guilty.

The presentence investigation (PSI) report showed that Devries had a 2017 adult felony conviction for possession of a controlled substance in Johnson County, Missouri, as well as four prior misdemeanor convictions for possession of marijuana. As a result, Devries had a G criminal history score, which carried a presumptive prison sentence between 38 and 43 months.

Wagner presented a written statement to the judge for consideration in sentencing Devries.

> "'Aside from the fact that he almost took my life from my family, the recovery from the accident was very painful. I was unable to walk for 3 months, had multiple surgeries, and the rehab was very difficult. This was especially difficult given the time of the accident because I was unable to spend Christmas with my family. My wife was pregnant at the time so I was unable to help her with whatever she needed. I was able to be there for my son's birth but I had to be in a wheelchair. Because of my injuries there are things that will be difficult to do for possibly forever. Lucky for me I didn't lose my life that night but everything I went thru and my family went thru I hope we never have to go thru again.'"

As for sentencing, Wagner wrote: "'That's difficult for the victim to say. For the pain he caused me and my family he should be put in jail. He almost took my life and I don't want him taking someone else's. Minimum to never drive again, we don't need people like that on the streets.'"

Through his retained counsel, Devries moved for both a dispositional (probation instead of prison) or durational departure (length of his sentence). Devries provided

3

several documents in support of his departure request, including a house arrest report showing that recently he had negative drug screens, a report showing completion of a substance abuse evaluation, and letters of support from family, a self-identified retired appellate judge who was also a family friend, and the executive director of a youth sports program who had known Devries for 19 years.

The same judge who accepted Devries' plea presided over sentencing, which occurred across two hearings in June 2024 and September 2024. Devries did not object to his criminal history, so the district court found he had a G criminal history score.

The State requested the maximum presumptive prison sentence of 43 months, emphasizing that Devries almost killed Wagner and that "vehicles are more of a deadly weapon than firearms." The State also played the video recording of the incident, pointing out that the collision was "completely avoidable" had Devries not been driving under the influence of alcohol and drugs. Wagner then addressed the court, describing his injuries, extensive treatment and recovery, and the impact of the incident on himself and his family. Wagner asked the court to "consider the magnitude and impact this crime not only had on myself but also on my famil[y]" and asked the court "to consider maximum sentencing under the law."

Defense counsel argued in support of the departure request, reiterating the arguments and facts contained in the written motion. Addressing his criminal history, defense counsel explained that Devries would have been "in the border box," but he failed to complete the terms of a diversion program that led to his 2017 felony conviction for possession of drugs and misdemeanor marijuana conviction. In sum, counsel asserted several substantial and compelling reasons existed to support the departure, including:

> "He did well while on pretrial release once we got the marijuana figured out. He's doing what he can to stay out of trouble to rectify the situation. When we got to presentence

4

investigation, there is $14,000-plus he's owed in restitution. His grandfather has offered to pay that, which paying it—we know that is nothing, but it is something that can be done and he's willing to do that because his grandson has promised to pay him back."

Defense counsel added that the district court had options available other than imposing the maximum sentence, including placing Devries into custody and a period of house arrest or work release while taking the matter under advisement. Devries then offered his allocution, first apologizing to Wagner and expressing remorse for what had happened. Devries then spoke to the court directly, stating that he regretted his actions and wished "more than anything" that he could take it all back. Devries explained that he did not want to be sent to prison because he wanted to be there for his family and be able to provide for them financially. Devries asked for "mercy and forgiveness" from the court, reiterating how "sorry" he was for that night.

The district court decided to take the matter under advisement but revoked Devries' bond and placed him in custody in the meantime. The court further ordered Devries to complete a therapeutic community evaluation with community corrections while in custody.

At the second hearing, the district court began by recounting the history of the case and discussing Devries' departure motion and its contents. The court also noted that Devries completed the therapeutic community evaluation in early September, and it showed he was not appropriate for the therapeutic community program. The court also noted that Devries had been in custody for 99 days since the previous hearing.

The parties presented additional arguments, with defense counsel emphasizing that Devries had entered the inmate work program, meaning he did not "just sit down and do nothing" while in jail. Counsel said sending Devries to prison was not appropriate

5

because Devries was not "dangerous," and that it would be better to allow house arrest or probation so that Devries could work on paying restitution to Wagner.

Devries said that he knew his actions have consequences for himself and others, including Wagner and Wagner's family. Devries also spoke about entering the inmate work program and completing the decision points class so that he "could understand why I think and to make better decisions in my future." He also attended three AA meetings while in jail. Devries learned that what he did that night was terrible and that he wished "more than anything" that he could have taken Wagner's pain instead. Devries reiterated that he was sorry to both the court and Wagner, adding that he was asking for mercy "and a chance to show that if you grant me probation that I will do everything that the State and that this Court wants." Devries spoke about placing his three-year-old son in therapy because he was not doing well with Devries in jail. Devries said all he wanted was "a chance to prove that I can do some things right" and "show my sons how to act, how to show my sons how to stand up and go to work and take care of their family, and that their actions do have consequences, and Dad is suffering his consequence right now."

The State again asked the district court to impose the maximum presumptive sentence and that Devries should spend that time in prison. The State addressed the arguments concerning departure but said:

> "Judge, as I think about this case, what strikes me is human life. Time is the most precious thing any of us have. Everyone in this courtroom is going to die. We are all going to be feeding worms one day. And the law to a large extent, practically every law we have, centers around the value of human life, the value of that time.
> "When we have a case where someone who through a reckless action—this thoughtless, unnecessary, without benefit to any person besides to consume a ton of alcohol, consume marijuana, has a gun with them, and then is driving high speeds on residential roads, roads with houses nearby, neighborhoods, and then hits a man who is just coming home, who is not hurting anyone, who did nothing to deserve what happened

to him, and almost takes him away forever, from his wife, from his family, from his friends, and puts a hole in all those people's lives—that is an action which needs to be punished with prison.

"[Defense counsel] uses the word penitentiary—I don't hear many people use that anymore, but we used to call prisons penitentiaries because society at some point used to believe in penance, that there were some actions that you could perform that could only be addressed by incarceration. It didn't matter if you were going to perform community service or pay restitution immediately for almost taking away someone's life.

"What you did was so serious that society cannot permit that to go without the serious consequence we have of prison.

"Mr. Devries is only looking at approximately three years in prison. That is a very small exchange for almost taking someone away from their family forever.

"So as much as [defense counsel] says—and I don't doubt what he says—that he says he is sorry, and he is taking steps to better himself, the action itself needs to have that consequence. Mr. Devries is right, actions have consequences.

"This is an act that I think is similar to shooting a gun in the air, or distributing drugs that could kill someone, or that do kill someone. What your actions are, they have no benefit. They are senseless. You are doing them because, as you might now say, you weren't thinking clearly. Well, thinking clearly or not, again, that action can shorten someone's time on Earth and remove them before it is their time to go. That is what the law, to a large extent, is meant to address.

"I am asking the Court to impose the presumptive prison sentence. That is what defendants in his position are expected to receive. And if he had presented himself differently to this Court, or if he had been, you know, not contrite or rude or some other way, I think that that would be a much easier argument for me to make. But when someone says that they are sorry and they do have something to show the Court, I understand why that makes it difficult. But nevertheless, I don't think that almost killing Mr. Wagner in the way that he did, I don't think probation, even with the shock time the Court's imposed, is appropriate; therefore, I would ask the Court impose a prison sentence."

The district court imposed the maximum underlying sentence of 43 months in prison but granted a dispositional departure to probation for 36 months. The court also

imposed 200 hours of community service, for which Wagner could provide input about "where he would like that community service to be served." The court further ordered that Devries would be on house arrest for 60 days with a remote breath unit and beyond that time at the discretion of his probation officer. As for restitution, the court ordered Devries to pay $14,493.93 within 14 days of the journal entry, with about $11,000 of that going directly to Wagner and the remainder to Wagner's insurance company. The court imposed additional conditions on Devries, such as obtaining a substance abuse evaluation, attending AA meetings three times a week and obtaining a sponsor within 30 days, having no contact with Wagner, having an interlock device in any vehicle owned or driven, completing a victim impact panel within 60 days, and disallowing the use of any internal probation sanctions.

The district court offered a lengthy explanation of its departure decision, stating that it "does find that substantial and compelling reasons do exist as argued in [the departure motion], coupled with," the following three factors:

(1)    Devries would have been on a border box, but for an unsuccessful diversion that led to his 2017 nonperson felony conviction for possession of a controlled substance.
(2)    Devries accepted responsibility by entering the no contest plea.
(3)    The court believed that Devries "could be utilized to change lives and not just sit in a prison" and "impact lives so as that they will not make the same mistakes that you made on this fateful night."

After imposing sentence, the district court addressed Wagner directly, explaining that the ruling "is not in any way designed to discount the pain that you have felt" and reiterating its hope that Devries would be able to impact the lives of others and "affect change" instead of "sitting in prison and doing his time." The court explained that Devries "felt the impact of what it means to have your liberty taken away" because he

8

had spent 99 days in jail between the two sentencing hearings, adding that it had "never seen before" a defendant taking "proactive" actions while in custody to complete the decision points class and enter the inmate worker program. Although Devries was determined not to be eligible for the therapeutic community program, the court noted that he "did not try to sabotage that evaluation."

Following sentencing, the district court memorialized its findings in the journal entry of judgment, listing the following reasons for its departure decision: "Criminal history–2017 conviction was a failed diversion; [Defendant]'s acceptance of responsibility; There is a way [Defendant] can be utilized to change lives by ordering 200 hours community service."

The State timely appeals under K.S.A. 21-6820 (authorizing State's appeal of departure sentence).

ANALYSIS

The State argues the district court abused its discretion by granting Devries' request for a dispositional departure.

*The law related to felony sentencing in Kansas.*

Beginning in 1993, the Kansas Legislature adopted the Kansas Sentencing Guidelines Act (KSGA) to govern the sentences for felony convictions. The Act was designed to ensure uniformity and fairness in sentencing across the state. By its adoption, the Legislature sought to (1) reduce prison overcrowding, (2) protect public safety, and (3) standardize sentences so similarly situated offenders are treated the same in order to reduce the effects of racial or geographic bias. See *State v. Sampsel*, 268 Kan. 264, Syl. ¶ 10, 997 P.2d 664 (2000).

Toward that purpose, the KSGA establishes a structured sentencing system using sentencing grids. The sentencing grids are two-dimensional tools that classify offenses based on the severity of the crime and the offender's criminal history. The vertical axis represents the severity level of the crime, while the horizontal axis represents the offender's criminal history score. The intersection of these axes determines the presumptive sentence, which includes a range of months for imprisonment or nonimprisonment (such as probation), depending on the offense and criminal history. The intended result is that more serious offenders with prior criminal histories will receive the harshest sentences. The presumptive sentence is the default sentence provided in the grid block for an offender, and it includes both a presumptive duration and disposition.

But the judge is allowed to depart from the presumptive sentence. A departure from the sentencing guidelines can be upward—meaning more severe than the grid provides, or downward—meaning less severe than the grid provides. The departure can be durational—meaning the number of months to be served in prison—or dispositional— meaning the court can grant probation or deny probation contrary to the KSGA recommendation. Yet if the court is going to depart from the sentencing grid, either durationally or dispositionally, it must find substantial and compelling reasons to do so. *State v. Albano*, 313 Kan. 638, 641, 487 P.3d 750 (2021). This flexibility allows judges to account for individual circumstances, such as the offender's culpability or the specific facts of the case, which may make the presumptive sentence too harsh or too lenient.

Lest these departures overcome and defeat the purpose of the KSGA, the Legislature has set out a very specific, although nonexclusive, list of prerequisite findings, called mitigating factors, that the court may consider in determining whether substantial and compelling reasons for a departure exist. See K.S.A. 21-6815(c). For example a finding that the victim was the aggressor, or that the defendant played a minor or passive role in the crime, or that the defendant has a mental illness or defect will all be acceptable reasons for a judge to depart. K.S.A. 21-6815(c)(1)(A), (B), (C). This is just a

10

sample, we will discuss others later in this opinion. Also certain crimes are off-limits for a departure sentence, like crimes of extreme sexual violence. See K.S.A. 21-6818(a) (judge may not impose a dispositional departure but may consider a limited durational departure).

*Our review of such decisions is limited.*

Appellate review of departure sentences is limited to determining "whether the sentencing court's findings of fact and reasons justifying a departure:  (1) Are supported by the evidence in the record; and (2) constitute substantial and compelling reasons for departure." K.S.A. 21-6820(d); *State v. Montgomery*, 314 Kan. 33, 36, 494 P.3d 147 (2021). Substantial "means 'real, not imagined, and of substance, not ephemeral.'" *State v. Morley*, 312 Kan. 702, 713, 479 P.3d 928 (2021). And a compelling reason to depart is "one that forces a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence." 312 Kan. 702, Syl. ¶ 4.

That said, the statute allows judges to base their decisions on nonstatutory factors as well, because the statutory reasons are not exclusive. In other words, there may be other reasons to depart other than those the Legislature has already weighed in on.

Here, the district court based its dispositional departure decision (granting probation in a case where the KSGA mandates prison) entirely on nonstatutory factors. Appellate courts review departure decisions based on nonstatutory mitigating factors a bit differently. We use a three-step framework, analyzing each step under a different aspect of the traditional abuse of discretion standard of review. In simple terms, this court's inquiry involves determining (1) whether the determination of a nonstatutory factor was guided by an erroneous legal conclusion; (2) whether substantial competent evidence supported the factual finding that the factor existed, i.e., an error of fact; and (3) whether

11

a reasonable person would have taken the view adopted by the sentencing court. See *Morley*, 312 Kan. at 711.

This is consistent with the longstanding abuse of discretion standard. See *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025) (a court abuses its discretion if it commits an error of law, an error of fact, or if its action is arbitrary, fanciful, or unreasonable). But as a final step, this court must assess each "nonstatutory factor by itself or collectively with other statutory or nonstatutory factors cited by the sentencing court" to determine if "the sentencing court acted reasonably when it concluded there was a substantial and compelling reason to depart in a particular case." *Morley*, 312 Kan. at 711.

The State bears the burden of showing the district court abused its discretion. See *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

*The parties differ on the departure factors the district court considered.*

In order for us to evaluate the factors the district court relied on, we must know what they are. The parties disagree about which factors the district court considered and applied when deciding to depart. The State focuses on the following three factors specifically articulated by the court from the bench and in its journal entry of judgment: (1) Devries' criminal history consisted of a single nonperson felony resulting from an unsuccessful diversion in 2017; (2) Devries accepted responsibility by entering the no contest plea; and (3) the court's belief that Devries could change lives rather than sitting in prison.

Devries, however, believes the district court considered five additional factors because the court found "that substantial and compelling reasons do exist *as argued in* [the departure motion], *coupled with*" the specific factors addressed in the State's brief.

12

(Emphasis added.) In short, Devries believes the court adopted his departure motion by reference, thus finding the following factors additional factors applied: (1) performance on bond; (2) a positive substance abuse evaluation and amenability to rehabilitation; (3) needing to support his children and significant other through employment and homeownership; (4) support from family and friends; and (5) availability of programs to reduce risk of recidivism and address community interests.

The Kansas Supreme Court has made it clear that a sentencing court must do more than allude to facts set out in a departure motion to properly state its reasons for granting a departure. "[I]f the sentencing judge departs from the presumptive sentence, the judge *shall state on the record* at the time of sentencing the substantial and compelling reasons for the departure." (Emphasis added.) K.S.A. 21-6815(a). In fact, in *State v. Whitesell*, 270 Kan. 259, 294, 13 P.3d 887 (2000), our Supreme Court reversed a departure decision because the district court had merely adopted the defendant's departure motion by reference. In other words, the court articulated no specific factors which justified the departure, in turn failing to satisfy the requirements of the statute. Here, while the district court made a general statement referring to Devries' departure motion, it did not recognize that every fact included in the motion was a substantial and compelling reason to grant the request.

And if it had it would have committed several factual errors. For example, the departure motion incorrectly stated multiple times that Devries pled guilty in this case, when he actually pled no contest. A no contest plea is not an admission of guilt. K.S.A. 22-3209(2); see also *State v. Case*, 289 Kan. 457, 461, 213 P.3d 429 (2009) ("'A plea of nolo contendere or "no contest," is "a plea by which *a defendant does not expressly admit his guilt*, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." During such pleas a defendant is *agreeing to refrain from contesting, rather than affirmatively voicing his guilt to, the charge or charges*.'").

In addition, Devries' motion did not explicitly present all the factors discussed in his brief as substantial and compelling reasons to justify a departure. Instead, only two paragraphs in the motion explicitly referred to "substantial and compelling" reasons: first in paragraph three by incorrectly stating that "defendant's admission of guilt can be used as a substantial and compelling reason for a departure"; and then in paragraph four, which begins by stating: "Here are the substantial and compelling reasons the defendant wants the Court to consider." That fourth paragraph goes on to describe: how Devries learned about the March 2023 arrest warrant, his marijuana usage while on bond in this case and eventually resolving those issues with negative drug screens, his remorse for causing Wagner's injuries, his need to support his family, and his willingness to pay restitution by obtaining a loan from his grandfather.

The remaining paragraphs can be summarized as follows: presenting background information about the case, explaining Devries' criminal history and the circumstances leading to his 2017 conviction after a failed diversion, his pretrial performance while on bond and employment, describing the letters of support attached to the motion, discussing the border box qualifications that would apply if Devries had a lower criminal history score, and listing some conditions the court could impose as part of probation. Although there is some overlap between these facts and the ones described in paragraphs three and four, that does not mean the court adopted them in full when deciding to grant the departure request.

Put simply, this court will only review whether the three factors specifically *articulated on the record* by the district court constituted substantial and compelling reasons to depart.

*Did the district court abuse its discretion by granting the departure?*

The State contends the three factors articulated by the district court did not constitute substantial and compelling reasons to depart. Again, those factors include: (1) Devries' criminal history consisted of a single nonperson felony resulting from an unsuccessful diversion in 2017; (2) Devries accepted responsibility by entering the no contest plea; and (3) the court's belief that Devries could change lives rather than sitting in prison. While the court did not specifically state whether any of these factors were independently sufficient to justify a departure, this court will review each factor individually and then collectively determine whether they provide a sufficient basis to deviate from the presumptive prison sentence. See *Morley*, 312 Kan. at 711.

*Criminal history*

The district court first found that Devries' 2017 nonperson felony conviction for possession of a controlled substance—which resulted from a failed diversion—elevated his criminal history score such that he faced presumptive imprisonment rather than being in a border box. The State argues primarily under the first step of the inquiry that the court's explanation for relying on this factor was legally erroneous. Remember the grid takes into account criminal history and there is no doubt that Devries had a felony conviction for a drug offense at the time he committed this offense. The State argues that to dive into the details behind the undisputed conviction would override legislative intent of requiring presumptive imprisonment for severity level 5 felony offenders with a G criminal history score.

The Kansas Supreme Court has recognized that departure decisions can be based—at least in part—on factors not fully accounted for in the determination of one's criminal history score. See *Montgomery*, 314 Kan. at 44 ("A key legal consideration when evaluating whether a nonstatutory factor can be a mitigating factor as a matter of

15

law is whether the Legislature, through the sentencing grid, has already taken the factor under consideration into account. If it has, then the factor cannot be a mitigating factor as a matter of law."). Yet, in *Montgomery*, the Supreme Court held that a difference in character of past and present offenses, for example whether they are person or nonperson crimes, standing alone could not be a nonstatutory mitigating factor because the KSGA already accounted for such differences. 314 Kan. at 40.

In contrast, in an earlier case, the Kansas Supreme Court held that the sentencing court properly relied on the fact that defendant had not previously committed an offense that could be deemed a felony if committed as an adult. *State v. Favela*, 259 Kan. 215, 236, 911 P.2d 792 (1996). The *Montgomery* court commented on *Favela*, noting "as far as the [KSGA is] concerned, passage of time and whether a juvenile offense would have been deemed a felony if committed by an adult are irrelevant within the Guidelines. Thus, the Guidelines cannot be said to have already taken these factors into account." *Montgomery*, 314 Kan. at 44.

The State asserts it "can find no case law supporting the proposition that *how* a conviction came about serves any purpose of the KSGA," and that "[t]here is no logical reason why a failed diversion should be treated less seriously than a guilty plea or a jury trial verdict." But the State overlooks that *Montgomery* says the proper inquiry for assessing whether a nonstatutory factor related to criminal history is legally permissible is "whether the Legislature, through the sentencing grid, has already taken the factor under consideration into account." 314 Kan. at 44. In other words, does the KSGA already treat prior convictions differently depending on whether they resulted from a failed diversion, guilty or no contest plea, or through a trial verdict? The answer is clearly "no," because the way a prior conviction came about has no bearing on an offender's criminal history under the KSGA. See K.S.A. 21-6810 (describing which prior convictions are included in criminal history); K.S.A. 21-6811 (determining criminal history classification based on prior convictions). Thus, the State fails to show it was *legally* improper for the district

court to rely on Devries' prior felony conviction resulting from a failed diversion as a nonstatutory mitigating factor.

That said, the inquiry does not end there because the second step requires this court to determine whether there was substantial evidence to support this departure factor. A document attached to the departure motion shows that Devries disclosed during a substance abuse evaluation that "he had been cited with possession of Adderall and Xanax as a teen (he clarifies the Adderall was to assist him in staying awake and alert, and the Xanax had belonged to a cousin) for which he accepted responsibility *and completed diversion.*" (Emphasis added.) Yet, Devries' departure motion stated that he "*didn't* complete the program," and his defense counsel reiterated the same at sentencing. (Emphasis added.) And because the presentence report indicates that he ultimately received a conviction for the offense, a report that he has stated is accurate, there was substantial competent evidence to support the factual finding that Devries' felony drug conviction resulted from a failed diversion.

The final step of the inquiry requires determining whether a reasonable person would have concluded that this factor forced the court to deviate from the presumptive prison sentence. The State correctly asserts it was unreasonable for the district court to rely on this factor by downplaying Devries' felony conviction solely because it resulted from a failed diversion. As the State explains, Devries' persistent and continued substance abuse contributed to the unsuccessful diversion and ultimately the circumstances that led to his current conviction. Moreover, Devries' criminal history included similar misdemeanor convictions for possession of marijuana, both before *and after* the offense for which he was granted diversion.

And finally, past behavior, particularly when it resembles the current offense, can be used to predict future behavior and influence sentencing outcomes. Courts have considered both the presence and absence of criminal history, as well as the nature of past

17

conduct, to determine the likelihood of reoffending and the appropriateness of departure sentences. See *Morley*, 57 Kan. App. 2d at 173. Here, Devries could have avoided a felony conviction altogether had he complied with his diversion, but he did not. The court could have just as easily, and more reasonably, concluded that Devries' failure to comply with the conditions of a diversion forewarns of future noncompliance with any probation granted here.

We conclude that no reasonable person would view this factor individually as a substantial and compelling reason to depart under these circumstances.

*Acceptance of responsibility*

The district court also found that Devries' acceptance of responsibility was a substantial and compelling reason to depart, calling it the "most important" factor. The State contends relying on this factor was unreasonable because Devries' acceptance of responsibility was "limited" since he entered a no contest plea.

Acceptance of responsibility through a no contest plea was both legally and factually appropriate to consider as a substantial and compelling reason to depart. We need to look no further than *Morley* for support on these points. See 312 Kan. at 712-13. First, *Morley* recognized that "a defendant's acceptance of responsibility, *as a matter of law*, can be a mitigating factor supporting a sentencing departure in any case." (Emphasis added.) 312 Kan. at 711-12. Second, in disagreeing with the panel's contrary conclusion, the *Morley* court explained that "[a] person does not always have to admit full wrongdoing or concede every material fact the State alleges to be credited with taking responsibility." 312 Kan. at 712. Here, at the time of sentencing, Devries expressed remorse to the court, the victim, and the victim's family. We conclude that the district court did not commit legal or factual error in relying on acceptance of responsibility as a nonstatutory mitigating factor.

18

Moving to the third step, the State also argues based on *Morley* that no reasonable person would find that Devries' limited acceptance of responsibility through a no contest plea forced the district court to grant a departure under the circumstances present. It points out that Devries pleading no contest "saved himself" from additional charges that were dismissed under the plea agreement and potential civil liability. The *Morley* court articulated a similar rationale for concluding that the defendant's limited acceptance of responsibility in that case was not enough to justify a departure. 312 Kan. at 713-14.

We pause to note that most of the letters of support submitted on Devries' behalf relied on a misapprehension of Devries' past and current drug use and his acceptance of responsibility. For example, of the seven letters submitted, four claimed that Devries either never drank excessively, had been sober since the collision, or complied with all pretrial conditions. The record directly belies those claims.

First, his blood alcohol content in this case was .167, over twice the legal limit of .08, a clear indication of excessive drinking. He indicated during his alcohol and drug evaluation, which was submitted as part of his departure motion, that in August 2022—eight months after his current offense—he became overly intoxicated at a friend's wedding. He admitted to consuming alcohol at least up until February 2023. On at least one occasion he experienced a blackout or "alcohol-induced memory loss" as result of his alcohol use. He had also been involved in fights while drinking and had some point been arrested for DUI—as self-reported during his alcohol and drug evaluation.

Second, Devries had four prior misdemeanor marijuana convictions and one prior felony drug conviction before this offense, indicating a refusal to stop using despite negative legal consequences. Yet he continued to use marijuana even when placed on pretrial supervision on this offense at the same rate he had been using before the collision. This level of use continued until at least September 2023, resulting in a violation of his pretrial conditions. He indicated that his longest period of sobriety from

19

marijuana use was two months. The alcohol and drug evaluation classified Devries' marijuana use as "[exceeding] the threshold of 'heavy' and 'persistent." The evaluator expressed concern that it would be "a challenge for him to remain marijuana free for a period of court supervision." So either the individuals writing the letters of support were unaware of his continued heavy use of alcohol and drugs even after this offense or purposefully sought to downplay it.

The other three letters did note that Devries was worthy of probation because he had accepted responsibility as evidenced by his plea, with one noting his *guilty* plea. As already indicated, Devries' acceptance of responsibility was not the result of a guilty plea but a no contest plea.

We conclude that no reasonable person would find that Devries' limited acceptance of responsibility through a no contest plea forced the district court to grant a departure under the circumstances. We agree with the State that by pleading no contest, Devries avoided additional charges that were dismissed under the plea agreement, and he avoided potential civil liability. So the plea resulted in a significant benefit to him. In addition, his postcharging behavior of continued drug and alcohol use belied any claim that he was accepting responsibility for his actions until the day of sentencing.

*Changing lives*

The last factor the district court relied on was its belief that Devries could "change lives" through community service. The State challenges this factor at all three steps of the inquiry, relying primarily on this court's decision in *State v. Theurer*, 50 Kan. App. 2d 1203, 1224, 337 P.3d 725 (2014).

*Theurer* also involved a defendant who drove while under the influence of alcohol and caused a traffic collision but with much more serious consequences:  a head-on

20

collision that resulted in the deaths of the two occupants—both parents with young children—of the other vehicle. The defendant agreed to plead no contest to two counts of involuntary manslaughter DUI, both severity level 4 person felonies, in exchange for the dismissal of aggravated battery charges. The district court granted a dispositional departure, releasing him to 36 months of probation instead of the presumptive prison sentence primarily based on the fact "the defendant [was] an exceptional person with the potential to provide a great benefit to society." 50 Kan. App. 2d at 1204-05, 1224. In a lengthy decision, this court reversed the departure ruling, holding that the district court committed legal error by relying on the defendant's exceptionalism as a substantial and compelling reason to depart. 50 Kan. App. 2d at 1223-24.

The State contends the district court's finding that Devries could change lives is akin to the rationale rejected in *Theurer*. Devries attempts to distinguish this case from *Theurer* by pointing out that the panel's holding was based on the district court's application of an outdated sentencing statute, but he fails to appreciate that this argument cuts in the State's favor. In essence, the panel in *Theurer* concluded that the district court had fundamentally erred in deciding the departure based on a mitigating factor that focused on the defendant's individual characteristics rather than the circumstances of *the case*. See 50 Kan. App. 2d at 1217-24 (conducting historical review of Kansas sentencing statutes).

We agree with the State and conclude that a mere belief or hope that a defendant will change lives if granted probation is not a substantial and compelling reason to depart from the presumptive prison sentence. While the court here did not specifically find that Devries is an exceptional person like in *Theurer*, the mere likelihood that he could benefit society is true of any defendant. Because the district court erred by relying on this factor, we conclude the court abused its discretion without addressing the remaining steps of the inquiry. Accordingly, we give this factor no weight in determining whether the other factors collectively supported a departure.

21

*Would a reasonable person have found the factors collectively justified a departure?*

The last question we must answer is whether the three factors cited by the district court compelled it to grant a departure. As explained above, Devries' criminal history and acceptance of responsibility were not individually sufficient to constitute substantial and compelling reasons to depart, while the belief that he could change lives was not a legally valid mitigating factor. But the question becomes whether a reasonable person could conclude that these factors considered collectively are substantial and compelling reasons to depart from the presumptive sentence. *Morley*, 312 Kan. at 714-15.

The State emphasizes the following additional facts adverse to Devries to show that no reasonable person would agree with the court's decision: (1) the significant injuries suffered by Wagner; (2) Devries expressed regret about losing his car immediately after the collision; (3) Devries expressed remorse but also "placed his own children in front of the Court in a bid for leniency" and insinuated that imprisoning him would punish his children; (4) Devries' criminal history included multiple prior convictions for possession of marijuana and a controlled substance; and (5) Wagner expressed a desire for Devries to serve prison time. Devries responds that the State's assertions run contrary to statements made by the prosecutor at sentencing about not doubting his authenticity, as well as recognizing that the district court's decision was "difficult" given Devries' contrition and all he had shown the court.

Based on the totality of the circumstances and factors present, we find that no reasonable person could agree with the district court's departure decision. Once again, the two legally valid mitigating factors the district court cited are criminal history and acceptance of responsibility. Even when those two factors are considered collectively, we find that no reasonable person could agree with the district court's departure decision against the backdrop of the facts and circumstances of this case.

22

As a result, we find the district court erred in granting Devries' dispositional departure sentence to probation and vacate the sentence and remand this case for resentencing.

Sentence vacated and case remanded with directions.